UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-20861-CIV-ALTONAGA/Damian

**AVROHAM BRASHEVITZKY**, *et al.*,

    Plaintiffs,
v.

**COVANTA DADE RENEWABLE ENERGY, LLC**; *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, Covanta Dade Renewable Energy, LLC ("Covanta Dade") and Covanta Holding Corporation's ("Covanta Holding[']s") Motion for Partial Judgment on the Pleadings and to Strike Class Allegations [ECF No. 81], filed on October 23, 2023.  Plaintiffs, Avroham Brashevitzky, Yoseph Brashevitzky, Chaya Brashevitzky, and Maria Alejandra Duran, individually and on behalf of others similarly situated, filed a Memorandum of Law in Opposition ("Resp.") [ECF No. 86]; to which Defendants filed a Reply [ECF No. 87].  The Court has considered the Second Amended Complaint ("SAC") [ECF No. 75], the parties' written submissions, and applicable law.  For the following reasons, the Motion is denied.

### I. BACKGROUND

This litigation concerns a fire that engulfed Covanta Dade's waste management facility in Doral, Florida from February 12, 2023 to March 12, 2023 and polluted the surrounding area with smoke, ash, soot, creosote, and various chemicals.  (*See generally* SAC).  During this period, Plaintiffs lived or owned property within the contaminated area, otherwise known as the fire's

plume. (*See id.* ¶¶ 61–63, 90–93, 101). Plaintiffs have yet to determine the exact geographic range of the plume but assert the range "may be ascertained scientifically and is the subject of ongoing investigation by Plaintiffs." (*Id.* ¶ 63).

According to Plaintiffs, the contaminants caused serious health injuries and physical damage to people and property located within the plume. (*See generally id.*). The contaminants "physical[ly] intru[ded]" into peoples' homes, both by collecting on outdoor surfaces and by entering homes through HVAC systems. (*Id.* ¶ 128 (alterations added); *see also id.* ¶¶ 66, 71). Plaintiffs were exposed to what the Environmental Protection Agency ("EPA") has deemed "unhealthy" or "hazardous" concentrations of contaminants associated with a host of medical problems, including kidney, liver, heart, lung, and brain damage; prenatal issues; and cancer. (*Id.* ¶ 85; *see also id.* ¶ 87). In addition to these health risks, the contaminants also damaged property within the plume. (*See generally id.*). Many HVAC systems need to be cleaned or replaced (*see id.* ¶ 139), and real property in the affected area has suffered reduced "usability" and "sale value" (*id.* ¶¶ 129–130).

Plaintiffs propose two classes for their putative class action. First, they suggest a "Property-Owner Class" that includes all real and personal property owners within the plume of the fire. (*Id.* ¶ 101 (quotation marks omitted)). Second, a proposed "Medical Monitoring Class" would include all persons who resided within the contamination area of the fire from February 12 through March 2, 2023. (*Id.* (quotation marks omitted)). Both classes allege a negligence claim (Count One). (*See id.* ¶¶ 117–24). The Property-Owner Class alleges trespass to real property (Count Two), trespass to personal property (Count Three), and private nuisance (Count Four)

claims.[1] (*See id.* ¶¶ 125–146). The Medical Monitoring Class alleges a medical monitoring claim (Count Six) and requests the Court require Covanta Dade to fund a medical monitoring program covering future medical screenings required to detect latent illnesses caused by exposure to the contaminants released in the fire. (*See id.* ¶¶ 151, 155).

Defendants filed an Answer and Affirmative Defenses [ECF No. 76] to the SAC and now move to strike class allegations and for judgment on the pleadings on Counts Two, Three, Four, and Six of the SAC for failure to state claims for relief (*see generally* Mot.).

## II. LEGAL STANDARDS

***Striking Class Allegations***. Federal Rule of Civil Procedure 23 governs the certification of class actions. "For a class to be certified, the named plaintiff must have standing[,] and the putative class must satisfy both the requirements of [] Rule [] 23(a) and the requirements found in one of the subsections of Rule 23(b)." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (alterations added; citation and footnote call numbers omitted). Under Rule 23(a), every class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *See id.* at 1266. Rule 23(b)(3), the subsection Plaintiffs rely on for their class allegations (*see* SAC ¶¶ 110–11), requires a court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy[,]" Fed. R. Civ. P. 23(b)(3) (alteration added).

Courts may strike class allegations based on pleadings alone when it is evident from the face of a complaint that a plaintiff can plead no set of facts that would allow class certification.

---

[1] Plaintiffs also stated a public nuisance claim (Count Five) (*see id.* ¶¶ 147–149) but have since dropped the claim (*see* Resp. 20 n.11).

3

*See Williams v. Wells Fargo Bank N.A.*, No. 11-21233-Civ, 2011 WL 4368980, at *11 (S.D. Fla. Sept. 19, 2011); *Romano v. Motorola, Inc.*, No. 07-Civ-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). But, as the undersigned has previously commented, "it is rare for courts to strike or dismiss class allegations prior to the filing of class certification motions and discovery[,]" *Lankford v. Carnival Corp.*, No. 12-24408-Civ, 2013 WL 12064497, at *6 (S.D. Fla. June 18, 2013) (alteration added; citations and quotation marks omitted), because "[class] determination usually should be predicated on more information than the complaint itself affords[,]" *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 934 (11th Cir. 2016) (alterations added; citation, footnote call number, and quotation marks omitted).

***Judgment on the Pleadings***. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (citation and quotation marks omitted). "The standard of review for judgment on the pleadings is almost identical to the standard used to decide motions to dismiss." *Doe v. Bd. of Cnty. Comm'rs, Palm Beach Cnty., Fla.*, 815 F. Supp. 1448, 1449 (S.D. Fla. 1992) (citation omitted). As on a motion to dismiss, the court "must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the non-movant." *GEICO Marine Ins. Co. v. Baron*, 426 F. Supp. 3d 1263, 1264 (M.D. Fla. 2019) (citing *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

Judgment on the pleadings is appropriate only when "it is beyond doubt that the non-movant can plead no facts that would support the claim for relief." *Bd. of Cnty. Comm'rs*, 815 F. Supp. at 1449–50 (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)); *see also King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (judgment on the

pleadings is warranted where "it is clear from the pleadings that the plaintiff is not entitled to relief under any set of facts consistent with the complaint" (citation omitted)).

### III. DISCUSSION

The Court first addresses Defendants' challenge to Plaintiffs' class allegations before turning to Defendants' arguments for judgment in their favor on each of the challenged Counts.

**A. Striking Class Allegations**

Defendants argue the Court should strike Plaintiffs' class allegations because neither of the proposed classes is "adequately defined and clearly ascertainable" for purposes of Rule 23(a). (Mot. 13 (citations and quotation marks omitted)).[2] According to Defendants, Plaintiffs' allegations fail to specify the "nature of the contaminants" and "the geographic scope of the contamination area[.]" (*Id.* 14 (alteration added; footnote call number and quotation marks omitted)). Defendants further contend the class definitions include uninjured persons and fail to satisfy Rule 23(b)'s predominance and superiority requirements. (*See id.* 15). Defendants anticipate the need to engage in "innumerable individual inquiries." (*Id.* 16).

As stated, striking class allegations at the pleading stage is only appropriate in those rare cases where plaintiffs can prove no facts that would support class certification. *See Lankford*, 2013 WL 12064497, at *6; *Williams*, 2011 WL 4368980, at *11 (explaining defendants bear "the burden of demonstrating . . . it will be impossible to certify the classes . . . regardless of the facts the plaintiffs may be able to prove." (alterations added; citation and quotation marks omitted)); *Romano*, 2007 WL 4199781, at *2 (same). Defendants fail to demonstrate there are no facts Plaintiffs could possibly prove to satisfy Rule 23. (*See generally* Mot.).

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

5

For example, Defendants assert the geographic boundaries of the proposed classes are too broad. (*See id.* 12–13). But Plaintiffs have already explained the boundaries are the subject of their ongoing investigation, and Plaintiffs may later decide to alter the proposed boundaries. (*See* SAC ¶ 63). Defendants also protest "the Property Owner Class includes *all* owners of real property" and is not limited to properties with soil or water that may require remediation. (Mot. 15 (alteration added; citation omitted; emphasis in original)). But it is possible that all owners of real property within the plume — with or without soil and water — suffered damages. (*See generally* SAC).

Defendants thus fail to persuade that the Court should strike the class allegations. The request is certainly premature. As the undersigned has previously observed, "the Court will not [] strik[e] class allegations . . . before Plaintiff[s] ha[ve] had the opportunity to engage in discovery and determine whether, for example," they should amend their class definition or even request class certification. *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, No. 20-20887-Civ, 2021 WL 720339, at *7 (S.D. Fla. Feb. 4, 2021) (alterations added; citing *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, No. 19-21583-Civ, 2020 WL 5984382, at *13–15 (S.D. Fla. May 12, 2020), *report and recommendation adopted*, 2020 WL 5982020 (S.D. Fla. Oct. 8, 2020) (deferring the defendant's motion to strike class allegations "to when and if class certification is sought"); *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 18-cv-157, 2020 WL 6876298, at *7 (N.D. Fla. Feb. 24, 2020) (declining to strike class allegations at the motion-to-dismiss stage); other citation omitted).

**B. Judgment on the Pleadings**

1. <u>Trespass to Real Property (Count Two)</u>

The Property-Owning Plaintiffs allege they suffered a trespass to real property when the fire deposited airborne contaminants on the soil, waterbodies, and surfaces of their properties. (*See* SAC ¶¶ 125–33). "Under Florida law, 'trespass to real property is an injury to or use of the land of another by one having no right or authority.'" *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1254 n.1 (11th Cir. 2006) (alteration adopted; quoting *Guin v. City of Riviera Beach*, 388 So. 2d 604, 606 (Fla. 4th DCA 1980)). Defendants contend Plaintiffs fail to properly state such a claim because (1) they fail to allege what contaminants were deposited on their properties; and (2) ash and soot alone cannot physically invade or enter property to create a trespass. (*See* Mot. 22). Plaintiffs insist they properly allege the unauthorized intrusion of dioxins and other contaminants onto their land, which have reduced the usability and sale value of their properties, thereby amounting to a trespass. (*See* Resp. 17–18; SAC ¶¶ 129–30).

Defendants acknowledge that trespass-to-land claims based on environmental contamination are viable under Florida law. (*See* Mot. 22). Their argument, however, is that ash and soot specifically cannot physically enter property to support a trespass claim. (*See id.*). Defendants fail to provide on-point authority on this issue — the only Florida case they cite employed a private nuisance analysis of plaintiffs' claims of air and noise pollution from a neighboring airport. (*See id.* (citing *Corbett v. E. Air Lines Inc.*, 166 So. 2d 196, 201 (Fla. 1st DCA 1964) ("[W]e examine the allegations of the complaint in the light of . . . private nuisance[.]" (alterations added)); other citations omitted)). And while Defendants cite a host of other state and federal district court decisions rejecting trespass to real property by airborne particles (*see id.* 22–23 (collecting cases)), none of these cases analyzes Florida law.

7

The Court is unaware of any case holding — or even suggesting — that the movement of airborne pollutants onto one's property cannot give rise to a trespass to land under Florida law. Indeed, several courts analyzing trespass-to-land claims under Florida law based on pollutants in water, as opposed to air, did not question the viability of such claims. *See, e.g.*, *Pinares v. United Techs. Corp.*, No. 10-80883-Civ, 2012 WL 12854871, at *3 (S.D. Fla. Mar. 26, 2012) (finding plaintiffs failed to state a trespass claim via groundwater contaminants because they did not "identify any chemical that [] allegedly . . . contaminated anything[,]" not because there can be no trespass by chemicals (alterations added)); *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1173, 1176 (11th Cir. 2014) (same); *N. Dade Water Co. v. Adken Land Co.*, 130 So. 2d 894, 898 (Fla. 3d DCA 1961) (determining that discharge of sewage effluent into neighboring lakes constitutes a trespass).

Defendants do not explain why the Court should distinguish between water and air pollutants. (*See generally* Mot.). Putting this aside, Plaintiffs plead that the contaminants landed on their homes. (*See* SAC ¶ 71). Taking this allegation as true, Plaintiffs have sufficiently pleaded that the contaminants entered their properties.

2. Trespass to Personal Property (Count Three)

The Property-Owning Plaintiffs also allege the deposition of airborne contaminants from the fire constituted not just a trespass to real property but also a trespass to personal property. (*See* SAC ¶¶ 137, 139 (alleging trespass onto their HVAC systems and air filters)). "Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *Coddington v. Staab*, 716 So. 2d 850, 851 (Fla. 4th DCA 1998) (citing 55 Fla. Jur. 2d, *Trespass* § 3 (1984)); *see also Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. 4th DCA 2001) (same). Defendants argue Plaintiffs'

trespass-to-personal-property claim fails because HVAC systems are *fixtures* rather than chattel, and because Plaintiffs do not allege Defendants intentionally interfered with their property. (*See* Mot. 20–21). Plaintiffs maintain that HVAC systems are personal property, and the claim has no intentionality requirement. (*See* Resp. 15–17).

The Court is unpersuaded by Defendants' contention that HVAC systems are fixtures — not personal property — rendering a trespass-to-personal-property claim inapplicable. (*See generally* Mot.).[3] Whether property attached to real property is a fixture "is a question of fact, or a mixed question of law and fact, to be determined by the evidence presented and the particular facts and circumstances of each case." *Cmty. Bank of Homestead v. Barnett Bank of the Keys*, 518 So. 2d 928, 930 (Fla. 3d DCA 1987) (citations omitted). Factors instructing a court's inquiry include whether an appliance "can be removed without doing substantial damage" and whether the property's owner meant the appliance to be permanently installed. *GECC Leasing Corp. v. Berkshire Life Ins. Co.*, 226 So. 2d 231, 233 (Fla. 4th DCA 1969) (citations omitted); *see also Dependable Air Conditioning & Appliances, Inc.*, 400 So. 2d at 119.

Such factual inquiry is inappropriate on a motion for judgment on the pleadings. Defendants offer three cases where courts found air conditioning and hot water systems to be fixtures, but those cases were decided after the records in those cases were developed. *See Sears, Roebuck & Co. v. Bay Bank & Tr. Co.*, 537 So. 2d 1041, 1043 (Fla. 1st DCA 1989) (affirming on appeal a trial court's finding that built-in air conditioning units were fixtures); *Gable v. Silver*, 258 So. 2d 11, 14 (Fla. 4th DCA 1972) (same); *Ribaudo v. Citizens Nat'l Bank*, 261 F.2d 929, 933 (5th

---

[3] A fixture is a chattel — personal and movable property, *see Burshan*, 805 So. 2d at 846 — that is "physically annexed or affixed" to real property and becomes "a part and parcel" of the real property, *Dependable Air Conditioning & Appliances, Inc. v. Off. of Treasurer and Ins. Comm'r*, 400 So. 2d 117, 119 (Fla. 4th DCA 1981) (citation omitted); *see also* 27 Fla. Jur. 2d *Fixtures* § 1.

9

Cir. 1958) (explaining whether an air conditioning unit is a fixture is "a question of fact[,]" and the appellate court had "no basis to alter the [district court's] decision" (alterations added)).

Other courts, also engaging in fact-intensive inquiries, have come out the other way. *See, e.g.*, *GECC Leasing Corp.*, 226 So. 2d at 233 (finding air conditioning units affixed to a building were not fixtures); *First Fed. Sav. & Loan Ass'n v. Stovall*, 289 So. 2d 32, 32–33 (Fla. 1st DCA 1974) (finding that a hot water heater, sink and plumbing attachments, and other kitchen items were personal property because there was "no evidence of intent to make the annexation a permanent accession" (quotation marks omitted)). Whether Plaintiffs' HVAC systems are considered personal property is a factual question that the Court must construe in Plaintiffs' favor at this stage. *See GEICO Marine Ins. Co.*, 426 F. Supp. 3d at 1264.

It is also unclear whether trespass to personal property requires intent. Again, trespass to personal property requires the "intentional use of, or interference with, a chattel[.]" *Coddington*, 716 So. 2d at 851 (alteration added; citation omitted). Defendants contend the adjective "intentional" applies to both "use of" and "interference with." (Reply 13). In support of their position, Defendants rely on a Florida Supreme Court case analyzing a different statutory standard finding that an adjective followed by two nouns applies to describe both nouns. (*See id.* (citing *State v. Huggins*, 802 So. 2d 276, 277–78 (Fla. 2001))).

But, as Plaintiffs point out, the phrase at issue here is distinct from the one analyzed in *Huggins* because it has a comma separating the nouns — "intentional use of**,** or interference with, a chattel[.]" *Coddington*, 716 So. 2d at 851 (alteration and emphasis added; citation omitted); *compare with Huggins*, 802 So. 2d at 277–78 (analyzing the phrase "occupied structure or dwelling"); (*see* Resp. 16). Plaintiffs argue the definition of trespass to personal property as articulated in *Coddington* requires that only the *use* of the chattel be intentional, not that any

interference be intentional. (*See* Resp. 16 (citation omitted)).

Defendants fail to cite any binding authority supporting their argument that a trespass to personal property must be intentional. (*See generally* Mot.). While the Court has been unable to find any binding authority contradicting Plaintiffs' interpretation of the *Coddington* rule, *see Coddington*, 716 So. 2d at 851, there are at least some early Florida Supreme Court cases indicating a trespass can be unintentional or mistaken, *see Wright v. Skinner*, 16 So. 335, 338 (Fla. 1894) (explaining that liability applies even "[w]here the trespasser is an unintentional or mistaken one" (alteration added)); *W. Yellow Pine Co. v. Stephens*, 86 So. 241, 242 (Fla. 1920) (same); *Stearns & Culver Lumber Co. v. Cawthon*, 56 So. 555, 558 (Fla. 1911) (upholding a lower court's finding of trespass where the defendant's negligent trespass was "gross"); *see also* Restatement (Second) of Torts § 217 (Am. L. Inst. 1965) (stating that "it is possible to speak of a negligent 'trespass' to a chattel" in some jurisdictions, despite trespass being limited to intentional interferences in most states).

The Court will not enter final judgment unless it is "beyond doubt" that Plaintiffs will fail to support their claim for relief, *Bd. of Cnty. Comm'rs*, 815 F. Supp. at 1449 (citation omitted); consequently, judgment on the pleadings in favor of Defendants is not warranted on this claim.

### 3. Private Nuisance (Count Four)

Plaintiffs next allege the fire created a private nuisance because the deposited contaminants continuously interfere with Plaintiffs' use and enjoyment of their properties. (*See* SAC ¶ 146). In Florida, "private nuisance is bottomed on the fundamental rule that every person should so use his property as not to injure that of another." *Karpel v. Knauf Gips KG*, No. 21-24168-Civ, 2022 WL 4366946, at *7 (S.D. Fla. Sept. 21, 2022) (alteration adopted; quoting *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954); quotation marks omitted). "[I]ntegral to the notion of a private nuisance is

the use of one's property in a way that is somehow a[]verse to another's interest in their property." *Id.* (alterations added; citations and emphasis omitted).

Defendants argue Florida does not recognize a private nuisance claim for damages to the public; and private nuisance is actionable where only one or a few people, not thousands, are impacted. (*See* Mot. 23–24). Plaintiffs disagree, insisting there is no "bright[-]line limit on the number of plaintiffs affected by a nuisance for it to remain private." (Resp. 19 (alteration added)).

Defendants fail to meet their burden for judgment on the pleadings on Plaintiffs' private nuisance claim. Their argument relies on the notion that Plaintiffs' injuries impact "thousands" of people. (Mot. 23). But Plaintiffs have yet to determine the number of people impacted by the fire; that is the "subject of ongoing investigation[.]" (SAC ¶ 63 (alteration added)). Furthermore, Defendants have not identified any clear population cap for a private nuisance claim under Florida law. The best Defendants can cite is a case where a court applied public nuisance law to a claim of private nuisance because the plaintiffs alleged that 40,000 people were impacted. (*See* Mot. 24 (citing *Coffie v. Fla. Crystals Corp.*, 460 F. Supp. 3d 1297, 1310–11 (S.D. Fla. 2020); other citations omitted)).[4] This is insufficient.

4. Medical Monitoring Claim (Count Six)

Finally, in Count Six, Plaintiffs state a medical monitoring claim (*see* SAC ¶¶ 151, 155) — a tort claim "seek[ing] to recover the anticipated costs of long-term diagnostic testing necessary to detect latent diseases that may develop as a result of tortious exposure[,]" *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1152, 1169 (S.D. Fla. 2021) (alterations added;

---

[4] Defendants also cite *Prior v. White*, for the proposition that a nuisance becomes public when "it affects an entire community[,]" but provide no legal definition of "an entire community[.]" (Mot. 18 (alterations added; citing 180 So. 347, 355 (Fla. 1938); other citation and quotation marks omitted)). Without a solid definition, Defendants cannot accuse Plaintiffs of exceeding any population cap as a matter of law.

citation and quotation marks omitted). Defendants challenge the sufficiency of this claim. (*See* Mot. 17).

> In Florida[,]
>
> a trial court may use its equitable powers to create and supervise a fund for medical monitoring purposes if the plaintiff proves the following elements:
>
> (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of that exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Coffie*, 460 F. Supp. 3d at 1313 (alteration added; quoting *Petito v. A.H. Robins Co.*, 750 So. 2d 103, 106–07 (Fla. 3d DCA 1999)).

According to Defendants, Plaintiffs do not adequately allege exposure to hazardous substances higher than background levels, a significantly increased risk of contracting a serious latent disease, or the existence of an adequate monitoring procedure. (*See* Mot. 17–20). The Court addresses each argument in turn.

*Exposure to Hazardous Substance at Greater than Normal Level.* Plaintiffs allege they were exposed to hazardous substances, including cancer-causing dioxins,[5] at greater than normal background levels. (*See* SAC ¶¶ 84–86, 91–93, 151). They also cite an Earthjustice report measuring concentrations of particulate matter smaller than 2.5 microns in size, volatile organic compounds, chlorine, hydrogen sulfide, hydrogen cyanide, and carbon monoxide at the incinerator site during and after the fire. (*See id.* ¶¶ 84–86 (citing Dominique Burkhardt, *et al.*, *The Doral*

---

[5] Defendants state that "whether dioxins are a hazardous substance is subject to reasonable dispute under Federal Rule of Evidence 201." (Reply 7 n.6 (citation and quotation marks omitted)). To the extent there is any dispute of material fact, a judgment on the pleadings is inappropriate. *See Perez*, 774 F.3d at 1335.

*Incinerator Fire*, EARTHJUSTICE (June 1, 2023), https://earthjustice.org/wp-content/uploads/2023/05/20230531_doral-incinerator-fire-report3.pdf ("Report"))). The Report found concentrations of these substances "reached the EPA-determined levels of unhealthy" and "exceed[ed] the threshold at which they could no longer be considered safe for human exposure." (*Id.* ¶¶ 85–86 (alteration added; citations omitted)).

Defendants take issue with Plaintiffs' reliance on the Report because it measures concentration of contaminants at the incinerator site, necessarily reflecting higher concentrations than what Plaintiffs would have been exposed to at their residences. (*See* Mot. 18–19). According to Defendants, Plaintiffs fail to allege their proximity to the location where these measurements were taken. (*See id.* 18 (citations omitted)). Defendants are mistaken.

Plaintiffs do allege their proximity to the facility — they either owned property or resided within the plume. (*See* SAC ¶¶ 90–93). Defendants well know the Court must accept as true Plaintiffs' allegation that the "contaminants traveled through the air [from the incinerator] . . . and infiltrated [people]" throughout the plume. (*Id.* ¶ 61 (alterations added)); *see also Perez*, 774 F.3d at 1335. Plaintiffs' allegations that unhealthy concentrations of contaminants were in the air at the incinerator site, and this air spread throughout the surrounding area (*see* SAC ¶¶ 61–63), render sufficiently plausible that the air Plaintiffs were exposed to in the surrounding area might also have had unhealthy concentrations of contaminants, *see Adinolfe*, 768 F.3d at 1173 (11th Cir. 2014) (concluding plaintiffs alleging groundwater contamination did not have to test each of their properties because allegations that they tested for and found contaminants on "at least some" of the properties were sufficient).

Further, Defendants contend "Plaintiffs misleadingly cite allegations of sampling conducted for *other substances* as supporting elevated levels of dioxins." (Reply 7 (citing Resp.

14

11; emphasis in original)). While the Report does not appear to include measurements of dioxins,[6] Plaintiffs include other allegations of dioxin pollution (*see* SAC ¶¶ 6, 60, 91); and do not allege that dioxin was the only toxin they were exposed to (*see id.* ¶¶ 80–81, 84–86, 91–93, 151).

Finally, Defendants suggest Plaintiffs fail to describe the method by which they were exposed to contaminants and analogize to a case where the court dismissed a plaintiff's complaint for failure to state how the plaintiff was exposed to substances on his wood deck. (*See* Mot. 18 (citing *Jacobs v. Osmose, Inc.*, No. 01-944-Civ, 2002 WL 3421682, at *3 (S.D. Fla. Jan. 3, 2002); other citation omitted)). But Plaintiffs allege precisely how the exposure occurred: the "airborne contaminants . . . rained down on people's heads and infiltrated their bodies through [their] skin and lungs." (SAC ¶ 80 (alterations added)).

*Significantly Increased Risk of Serious Latent Disease.* Defendants argue Plaintiffs' examples of possible risks of exposure are insufficient to state a claim because the risks are either too vague or not latent. (*See* Mot. 19). Plaintiffs insist they sufficiently allege their exposure to the mentioned chemicals significantly increases their risk of decreased lung function, irregular heartbeat, liver damage, kidney damage, central nervous system damage, prenatal impacts, cardiac and pulmonary issues, and cancer. (*See* Resp. 13–14; SAC ¶¶ 87, 91–93). At this stage, Plaintiffs' allegations are sufficiently plausible.

Defendants analogize Plaintiffs' allegations to a case where the court found the alleged risk of neurological and respiratory issues was not "reasonably specific" or "serious" enough. (Mot. 19 (citing *Gibson v. Lapolla Industries, Inc.*, No. 13-cv-646, 2014 WL 12617007, at *3 (M.D. Fla. Jan. 31, 2014); quotation marks omitted)). But Plaintiffs' allegations are sufficient because

---

[6] Plaintiffs do not specify whether dioxins are included as "particulate matter smaller than 2.5 microns in size[.]" (SAC ¶ 84 (alteration added; citing Report 4)).

Plaintiffs specifically allege heightened cancer risk. (*See* SAC ¶¶ 87, 151). Moreover, Plaintiffs' allegations are similar to those in *Grayson v. Lockheed Martin Corporation*, where the court found allegations that the plaintiffs were exposed to "very harmful" contaminants that cause "various disorders or cancers" sufficiently plausible. No. 20-cv-1770, 2021 WL 2873465, at *1–2 (M.D. Fla. May 13, 2021) (citations omitted)).

*Existence of Monitoring Procedure*. Finally, Defendants argue judgment in their favor is warranted because Plaintiffs' claims for the existence of and necessity of a monitoring regime are "formulaic" and "merely recite the elements of the tort." (Mot. 19 (citing SAC ¶ 151)). Not so. Plaintiffs allege monitoring procedures exist, including "screening tests for cancers frequently caused by the specific chemicals" to which they were exposed, that are "not normally [] recommended to the general population[.]" (Resp. 14 (alterations added; citing SAC ¶ 151; emphasis and quotation marks omitted)).

Nothing on the face of Plaintiffs' pleading forecloses the possibility that Plaintiffs can assert additional facts supporting a monitoring procedure specific to Plaintiffs' exposure. (*See* SAC ¶ 151). In sum, the Court declines to enter judgment in favor of Defendants on this Count.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion for Partial Judgment on the Pleadings and to Strike Class Allegations **[ECF No. 81]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 2nd day of January, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record